2024R00895/EAB/JHG

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA | : Hon. Reneé M. Bumb |
| | : |
| | : Criminal No. 25 92 |
| v. | : |
| | : 52 U.S.C. § 20511(2)(B) |
| | : 18 U.S.C. § 2 |
| CRAIG CALLAWAY | : |

### INFORMATION

The defendant having waived in open court prosecution by indictment, the United States Attorney for the District of New Jersey charges:

**(Fraudulent Procurement, Casting, and Tabulation of Ballots)**

**The Defendant and Overview of Vote-By-Mail Requirements in New Jersey**

1. At all times relevant to this Information:

   a. Defendant Craig Callaway ("CALLAWAY"), a former member and President of the City Council of Atlantic City, was a political organizer who assisted campaigns for elected offices in New Jersey.

*The 2022 General Election Cycle*

   b. The 2022 general election in Atlantic County (the "2022 General Election") included a race for New Jersey's Second Federal Congressional District, countywide races for several Atlantic County Commissioners, and local races for numerous councilpersons, mayors, seats on Boards of Education, as well as other citywide offices. A primary election was held on or about June 7, 2022, and the 2022 General Election was held on or about November 8, 2022.

*Mail-In Ballots*

> c.      Registered voters in New Jersey could apply to vote a ballot by mail by completing an Application for Vote-By-Mail Ballot ("Vote-By-Mail Application") and returning the Vote-By-Mail-Application by mail or hand-delivery to the county clerk's office in the registered voter's county of residence. Alternatively, a registered voter could apply for a mail-in ballot by authorizing a messenger ("authorized messenger") to pick up the Vote-By-Mail application and return it to the county clerk's office on the voter's behalf.  Through that process, the registered voter would designate an authorized messenger by name on the Vote-By-Mail Application.  The person designated to serve as a registered voter's authorized messenger would then complete a separate portion of the Vote-By-Mail Application, which included providing the authorized messenger's address and date of birth. That authorized messenger subsequently could deliver the completed Vote-By-Mail Application to the county clerk's office in the registered voter's county of residence on behalf of the registered voter.

> d.      Pursuant to New Jersey Statutes Annotated (N.J.S.A.) § 19:63-3, a registered voter may apply for a mail-in ballot "[n]ot less than seven days before an election in which a voter wants to vote by mail . . ." However, "[a]ny voter who fails to apply for a mail-in ballot before the seven-day period . . . may apply in person to the county clerk for a mail-in ballot up to 3 p.m. of the day before the election." The statute further states that Vote-By-Mail Applications are required to

2

"[be] in writing, . . . signed by the applicant and . . . state the applicant's place of voting residence and the address to which the ballot shall be sent."

  e. If a registered voter was approved to vote by mail, the voter's authorized messenger could also obtain from the county clerk's office the mail-in ballot for the registered voter.  The authorized messenger was required to deliver that ballot to the voter.  To obtain a mail-in ballot for the registered voter, the authorized messenger was required to sign a portion of the Vote-By-Mail Application that stated: "I do hereby certify that I will deliver the Mail-in Ballot directly to the voter and no other person, under penalty of law."

  f. Once the registered voter completed the mail-in ballot, an individual known as a "bearer" could return it on behalf of the registered voter by placing it into a secure ballot drop box or delivering it in-person to the registered voter's county Board of Elections Office.  The bearer was required to sign the "bearer portion" of the outer envelope of the ballot in the presence of the voter when taking custody of the ballot.

  g. If a registered voter did not designate an authorized messenger on the Vote-By-Mail Application, once the application was approved, the registered voter would receive a mail-in ballot in the mail.  The registered voter would complete the mail-in ballot and return it by mailing it, placing it into a secure ballot drop box, or delivering it in-person to the registered voter's county Board of Elections Office.

h.      An authorized messenger was required either to be a family member of the registered voter or, in Atlantic County, a registered voter of Atlantic County. An individual could serve as an authorized messenger for no more than three qualified voters per election, or no more than five qualified voters per election if those five voters were immediate family members residing in the same household as the authorized messenger.

i.      Pursuant to N.J.S.A. § 19:34-1.1, in the State of New Jersey, it was a felony offense to willfully procure, cast, or tabulate mail-in ballots that were known to be materially false, fictitious, or fraudulent.

**Defendant's Procurement, Casting, and Tabulation of False Mail-In Ballots**

2.      Beginning in or about October 2022, approximately one month before the 2022 General Election, CALLAWAY and others who were working at CALLAWAY's direction ("CALLAWAY's subordinates" or "subordinates") approached numerous individuals in Atlantic City, often at the individuals' homes, promising to pay them between approximately $30 and $50 in return for a day's work at the Atlantic County Clerk's Office, located in Mays Landing, New Jersey (the "County Clerk's Office"). Beyond telling these individuals that they would be paid for their efforts in connection with voting matters, CALLAWAY and his subordinates provided the individuals little detail about the work they would be asked to perform at the County Clerk's Office—which was to act as purported authorized messengers for voters who supposedly wished to vote by mail. Many of

4

these individuals accepted CALLAWAY's and his subordinates' offer to work for payment.

3.    CALLAWAY and his subordinates further offered to transport these individuals to and from the County Clerk's Office to perform this voting-related work.  Upon arriving at the parking lot of the County Clerk's Office (the "County Clerk's Office Parking Lot"), an individual who accepted CALLAWAY's offer for work would meet with CALLAWAY, CALLAWAY's subordinates, or, on occasion, both, and provide CALLAWAY or CALLAWAY's subordinates with their identification.  CALLAWAY or CALLAWAY's subordinates used the identification to complete the authorized messenger portion of multiple Vote-By-Mail Applications and then provided the individual with those applications.  The majority of the purported messengers were unfamiliar with the role of an authorized messenger and did not know the voters listed on the Vote-By-Mail Applications for whom they were supposedly serving as authorized messengers.

4.    After receiving Vote-By-Mail Applications from CALLAWAY or his subordinates, these purported messengers entered the County Clerk's Office carrying anywhere from one to four completed Vote-By-Mail Applications.  Inside the County Clerk's Office, as instructed by CALLAWAY or his subordinates, these individuals provided County Clerk's Office personnel proof of identification and signed the Vote-By-Mail Applications in the authorized messenger portion before handing those signed applications to office personnel.  Further as instructed by CALLAWAY or his subordinates, these individuals waited while office personnel

5

processed the applications and, if the applications were approved, provided to the individuals mail-in ballots for the voters listed on the applications.

5.    After receiving mail-in ballots, these purported messengers left the County Clerk's Office and handed the ballots to CALLAWAY or his subordinates, instead of delivering the ballots to the voters who supposedly requested delivery of the mail-in ballots as required by New Jersey law and as they represented they would do.  Shortly thereafter, these purported messengers were paid for their efforts, and in most cases, they were transported by CALLAWAY or his subordinates from the County Clerk's Office Parking Lot to locations in and around Atlantic City.

6.    The voters listed on many of the Vote-By-Mail Applications submitted by these purported messengers, as described in paragraphs 2 through 5, above, did not vote in the 2022 General Election, either in-person or by submitting a mail-in ballot.  Most of these purported voters also neither filled out a Vote-By-Mail Application nor affixed the signature that was on the application.  Additionally, most of these purported voters did not know the purported messenger listed on the falsified Vote-By-Mail Application.

7.    Many of the mail-in ballots collected by CALLAWAY or his subordinates, or both, as described in paragraphs 2 through 6, above, were ultimately cast in the names of individuals who had neither cast their own ballots or authorized CALLAWAY, his subordinates, or anyone else, to cast ballots for them for the 2022 General Election.  Many of these mail-in ballots, including but not

6

limited to those detailed in paragraphs 8 through 38 below, were counted towards the 2022 General Election.

*Purported Voter 1*

8.    According to a purported voter ("PV 1"), PV 1 did not vote in the 2022 General Election, either in-person or by submitting a mail-in ballot.  When shown a copy of a Vote-By-Mail Application that was submitted in PV 1's name and purportedly signed by PV 1, PV 1 stated that PV 1 neither filled out the application nor signed the application.

9.    When shown that the Vote-By-Mail Application contained the name of an individual who allegedly served as PV 1's authorized messenger ("Messenger 1"), PV 1 stated that PV 1 did not know and had never spoken to Messenger 1.  When shown a photograph of Messenger 1, PV 1 stated that PV 1 did not recognize Messenger 1.

10.    Law enforcement conducted surveillance outside the County Clerk's Office on or about October 21, 2022, when the falsified Vote-By-Mail Application was submitted by Messenger 1 on behalf of PV 1.  On that day, CALLAWAY drove a silver pickup truck (the "Silver Truck") to the County Clerk's Office Parking Lot. While parked in the County Clerk's Office Parking Lot and sitting in the driver's seat of the Silver Truck, CALLAWAY met with Messenger 1.  Specifically, as recorded by video surveillance, at approximately 10:19 a.m., CALLAWAY spoke with Messenger 1 while sorting through what appeared to be a stack of Vote-By-

7

Mail Applications. During the conversation, CALLAWAY handed multiple pre-filled applications to Messenger 1.

11. According to Messenger 1, who was interviewed by law enforcement, CALLAWAY instructed Messenger 1 where on the applications Messenger 1 should sign. When law enforcement showed Messenger 1 the Vote-By-Mail Applications listing Messenger 1 as the authorized messenger, including the Vote-By-Mail Application that Messenger 1 submitted on behalf of PV 1, Messenger 1 stated that Messenger 1 signed the applications despite not knowing and never having spoken with PV 1, or the other purported voters listed on the other Vote-By-Mail Applications that CALLAWAY handed to Messenger 1 that day.

12. Further according to Messenger 1, after Messenger 1 received the Vote-By-Mail Applications from CALLAWAY, CALLAWAY told Messenger 1 to enter the County Clerk's Office and submit the applications to someone inside the office. CALLAWAY further explained that after submitting the applications, Messenger 1 would be given mail-in ballots corresponding to the prospective voters listed on the applications and that Messenger 1 should bring the ballots that Messenger 1 received directly to CALLAWAY upon exiting the County Clerk's Office.

13. According to records maintained by the County Clerk's Office, Messenger 1 submitted PV 1's Vote-By-Mail Application to an employee of the County Clerk's Office at approximately 10:31 a.m., approximately 12 minutes after CALLAWAY handed Messenger 1 multiple Vote-By-Mail Applications. According to

these records, the County Clerk's Office accepted PV 1's application and provided Messenger 1 with a mail-in ballot in PV 1's name for the 2022 General Election.

14.    Based on video surveillance, approximately fifteen minutes later, at approximately 10:46 a.m., Messenger 1 exited the County Clerk's Office and approached the Silver Truck. At that point, Messenger 1 handed multiple mail-in ballots to CALLAWAY. According to Messenger 1, after Messenger 1 handed the mail-in ballots to CALLAWAY, CALLAWAY gave Messenger 1 approximately $50 in cash.

15.    Although PV 1 stated that PV 1 did not vote in the 2022 General Election, on or about December 5, 2022, the Atlantic County Board of Elections Office scanned and counted a mail-in ballot in PV 1's name. Accordingly, on an earlier date, that ballot was cast fraudulently using PV 1's name.

*Purported Voter 2*

16.    According to a purported voter ("PV 2"), PV 2 did not vote in the 2022 General Election, either in-person or by submitting a mail-in ballot. When shown a copy of a Vote-By-Mail Application that was submitted in PV 2's name and purportedly signed by PV 2, PV 2 stated that PV 2 neither filled out the application nor signed the application.

17.    When shown that the Vote-By-Mail Application contained the name of an individual who allegedly served as PV 2's authorized messenger ("Messenger 2"), PV 2 stated that PV 2 did not know Messenger 2 and, when shown a photograph of Messenger 2, stated that PV 2 did not recognize Messenger 2.

9

18.     Law enforcement conducted surveillance outside the County Clerk's Office on or about November 4, 2022, when the falsified Vote-By-Mail Application was submitted by Messenger 2 on behalf of PV 2. On that day, CALLAWAY drove to the County Clerk's Office Parking Lot in a grey sedan (the "Grey Sedan"). While parked in the County Clerk's Office Parking Lot and sitting in the driver's seat of the Grey Sedan, CALLAWAY met with Messenger 2. Specifically, at approximately 12:25 p.m., CALLAWAY spoke with Messenger 2 and handed Messenger 2 what appeared to be multiple Vote-By-Mail Applications.

19.     Based on video surveillance, at approximately 12:29 p.m., approximately four minutes after Messenger 2 received the applications from CALLAWAY, Messenger 2 entered the County Clerk's Office.

20.     According to records maintained by the County Clerk's Office, Messenger 2 submitted PV 2's Vote-By-Mail Application to an employee of the County Clerk's Office at approximately 12:40 p.m. According to these records, the County Clerk's Office accepted PV 2's application and provided Messenger 2 with a mail-in ballot in PV 2's name for the 2022 General Election.

21.     Approximately 25 minutes later, at approximately 1:05 p.m., Messenger 2 exited the County Clerk's Office and approached the Grey Sedan. At that point, Messenger 2 handed what appeared to be multiple mail-in ballots to CALLAWAY. Based on surveillance video, after Messenger 2 handed the mail-in ballots to CALLAWAY, CALLAWAY gave an individual who had accompanied Messenger 2 to the County Clerk's Office, and also served as an authorized

10

messenger that day, an unidentified amount of cash.  Shortly thereafter, Messenger 2 and the accompanying individual left the County Clerk's Office Parking Lot together.

22.    Although PV 2 stated that PV 2 did not vote in the 2022 General Election, on or about December 5, 2022, the Atlantic County Board of Elections Office scanned and counted a mail-in ballot in PV 2's name.  Accordingly, on an earlier date, that ballot was cast fraudulently using PV 2's name.

*Purported Voter 3*

23.    According to a purported voter ("PV 3"), PV 3 did not vote in the 2022 General Election.  When shown a copy of a Vote-By-Mail Application that was submitted in PV 3's name and purportedly signed by PV 3, PV 3 stated that PV 3 did not recognize the document.  PV 3 further stated that PV 3 believed the signature on the Vote-By-Mail Application was PV 3's, but that PV 3 did not remember signing the document.

24.    When shown that the Vote-By-Mail Application contained the name of an individual who allegedly served as PV 3's authorized messenger ("Messenger 3"), PV 3 stated that PV 3 did not recognize Messenger 3's name.  When shown identification including a photograph of Messenger 3, PV 3 stated that PV 3 did not recognize Messenger 3.

25.    Law enforcement conducted surveillance outside the County Clerk's Office on or about October 18, 2022, when the falsified Vote-By-Mail Application was submitted by Messenger 3 on behalf of PV 3.  On that day, CALLAWAY drove

Messenger 3 and approximately five other individuals to the County Clerk's Office Parking Lot in a white minivan (the "White Minivan"). At approximately 3:10 p.m., while parked in the County Clerk's Office Parking Lot and sitting in the driver's seat of the White Minivan, CALLAWAY handed Messenger 3 what appeared to be multiple Vote-By-Mail Applications. Video surveillance shows that after receiving the applications from CALLAWAY, Messenger 3 walked away from the White Minivan and towards the County Clerk's Office.

26.    According to records maintained by the County Clerk's Office, Messenger 3 submitted PV 3's Vote-By-Mail Application to an employee of the County Clerk's Office at approximately 3:24 p.m. According to these records, the County Clerk's Office accepted PV 3's application and provided Messenger 3 with a mail-in ballot in PV 3's name for the 2022 General Election.

27.    Approximately ten minutes later, at approximately 3:34 p.m., Messenger 3 exited the County Clerk's Office and approached the White Minivan. At that point, Messenger 3 handed what appeared to be mail-in ballots to CALLAWAY. Moments later, at approximately 3:37 p.m., CALLAWAY handed Messenger 3 what appeared to be an additional Vote-By-Mail Application that CALLAWAY had moments earlier appeared to have filled out. According to records maintained by the County Clerk's Office, Messenger 3 submitted this additional Vote-By-Mail Application at approximately 3:47 p.m. Further, according to these records, the County Clerk's Office accepted this additional application for a purported voter other than PV 3, and provided Messenger 3 with a mail-in ballot in

12

that purported voter's name.  As recorded by video surveillance, at approximately 3:54 p.m., after exiting the County Clerk's Office, Messenger 3 handed CALLAWAY what appeared to be this additional ballot.

28.     Although PV 3 stated that PV 3 did not vote in the 2022 General Election, on or about December 5, 2022, the Atlantic County Board of Elections Office scanned and counted a mail-in ballot in PV 3's name.  Accordingly, on an earlier date, that ballot was cast fraudulently using PV 3's name.

*Purported Voter 4*

29.     According to a purported voter ("PV 4"), PV 4 did not vote in the 2022 General Election.  When shown a copy of a Vote-By-Mail Application that was submitted in PV 4's name and purportedly signed by PV 4, PV 4 stated that the document had been brought to PV 4's residence by a woman ("Individual 1").  PV 4 told law enforcement that PV 4 only signed the application and Individual 1 completed the rest of the application.

30.     When shown that the Vote-By-Mail Application in PV 4's name contained the name of an individual who allegedly served as PV 4's authorized messenger ("Messenger 4"), and shown a driver's license photograph of Messenger 4, PV 4 stated that PV 4 did not know and had never met Messenger 4.

31.     Law enforcement conducted surveillance outside the County Clerk's Office on or about November 7, 2022, when the falsified Vote-By-Mail Application was submitted by Messenger 4 on behalf of PV 4.  On that day, video surveillance showed CALLAWAY and Messenger 4 walking from the County Clerk's Office

13

Parking Lot to a nearby picnic table (the "Picnic Table") at approximately 9:02 a.m. While Messenger 4 and CALLAWAY sat at the Picnic Table, CALLAWAY filled out what appeared to be several Vote-By-Mail Applications. At approximately 9:08 a.m., CALLAWAY handed these applications to Messenger 4.

32. As recorded by video surveillance, Messenger 4 then entered the County Clerk's Office carrying the Vote-By-Mail Applications Messenger 4 had moments earlier received from CALLAWAY.

33. At approximately 9:26 a.m., a woman ("Individual 2") joined CALLAWAY at the Picnic Table. Both CALLAWAY and Individual 2 were in possession of what appeared to be Vote-By-Mail Applications. While sitting with CALLAWAY at the Picnic Table, Individual 2 appeared to complete portions of the Vote-By-Mail Applications.

34. At approximately 9:44 a.m., a man exited the County Clerk's Office ("Individual 3") and walked to the Picnic Table where he handed what appeared to be mail-in ballots to CALLAWAY, who then handed them to Individual 2. At approximately 9:56 a.m., CALLAWAY walked away from the Picnic Table.

35. According to records maintained by the County Clerk's Office, Messenger 4 submitted PV 4's Vote-By-Mail Application to an employee of the County Clerk's Office at approximately 9:46 a.m. According to these records, the County Clerk's Office accepted PV 4's application and provided Messenger 4 with a mail-in ballot in PV 4's name for the 2022 General Election.

14

36.    Approximately 19 minutes after submitting PV 4's Vote-By-Mail Application, at approximately 10:05 a.m., Messenger 4 exited the County Clerk's Office, walked to the Picnic Table, and handed what appeared to be multiple mail-in ballots to Individual 2.  Individual 2 took possession of these mail-in ballots.  At approximately 10:13 a.m., Individual 2 left the Picnic Table with the ballots.

37.    At approximately 11:21 a.m., in the County Clerk's Office Parking Lot, Messenger 4 entered the Grey Sedan operated by CALLAWAY.  Moments later, CALLAWAY drove the Grey Sedan with Messenger 4 away from the County Clerk's Office.

38.    Although PV 4 stated that PV 4 did not vote in the 2022 General Election, on or about December 5, 2022, the Atlantic County Board of Elections Office scanned and counted a mail-in ballot in PV 4's name.  Accordingly, on an earlier date, that ballot was cast fraudulently using PV 4's name.

39.    From in or about October 2022 through on or about November 8, 2022, in the District of New Jersey and elsewhere, defendant,

**CRAIG CALLAWAY,**

in an election for federal office, did knowingly and willfully deprive, defraud, and attempt to deprive and defraud the residents of the State of New Jersey of a fair and impartially conducted election process by the procurement, casting, and tabulation of ballots that were known by defendant CALLAWAY to be materially false, fictitious, and fraudulent under the laws of the State of New Jersey in which the election was held.

15

In violation of Title 52, United States Code, Section 20511(2)(B) and Title 18, United States Code, Section 2.


PHILIP R. SELLINGER
United States Attorney

16

CASE NUMBER: 25-___92___

# United States District Court
## District of New Jersey

### UNITED STATES OF AMERICA

v.

## CRAIG CALLAWAY

# INFORMATION FOR

**52 U.S.C. § 20511(2)(B)**
**18 U.S.C. § 2**

VIKAS KHANNA
ACTING UNITED STATES ATTORNEY
FOR THE DISTRICT OF NEW JERSEY

ERIC A. BODEN
JAMES H. GRAHAM
ASSISTANT U.S. ATTORNEYS
CAMDEN, NEW JERSEY
(856) 757-9066